*Orphans' Court, Dauphin County, May 8th, 1861.*

### IN THE MATTER OF WELTMER'S ESTATE.

A man made a will leaving all his property to his children, share and share alike; and if any of them should die without lawful issue, then their shares to be divided among his other children. In the latter part of the instrument, he directs his personal property to be sold and the proceeds paid to his heirs, as they become of age, share and share alike. Two of his children died, after coming of age, without issue. *Held,* That their shares in his real property went to their brothers and sisters, but that their administrators were entitled to their portions of the personal property.

By THE COURT.—This case comes before the court on exceptions to the auditor's report, which presents the following facts: Ulrich Weltmer made his will on the 9th of May, 1843, and died early in June of the same year, leaving ten children, devisees, named in his will.

They are all in full life except Henry and Anna, both of whom died intestate and without issue, the latter on the 4th of October, 1853, and the former in August, 1857. Anna married Daniel Sanders, who claims her share of her father's estate as her administrator, and Henry died largely indebted, and his portion is claimed by his administrator on behalf of creditors. Each were of full age at the time of their death. The land referred to in Weltmer's will was sold by Jacob Behm, administrator, *cum testamento annexo,* on the twenty-fourth day of September, 1859, and it is the money arising from that sale that is before the court for distribution. Henry and Anna died before the time fixed in the will for the real estate to be sold. It is conceded by the counsel on both sides that the land under the will of Ulrich Weltmer was agreed to be converted into money, and must be treated as such. And although the auditor decided it was real estate, yet as both parties contend otherwise and ask us to consider it, we shall not stop to inquire whether it is money or land, but call it money, as they desire. The clause in the will, on which this case mainly turns, is in these words: " Item. I give and

[In the Matter of Weltmer's Estate.]

bequeath unto my children, whose names are Catharine, Christian, Anna, John, Eliza, Susanna, Abraham, Henry, Ulrich, and Jacob, share and share alike, of all my estate, whether real, personal, or mixed; and if any of my children shall die without leaving lawful issue, then their share shall be divided among my other children or their heirs, share and share alike." Of the actual intention of the testator in the present case, we cannot entertain a doubt. The words of the will clearly show that he desired his property to go in equal shares to each of his children, and if any of them died without leaving children living at the time of their death, their share should be divided among his other children then living, and the heirs of such as died leaving children. Is there any rule of the law which will prevent this intention from being carried into effect? It does not create a perpetuity—all the lives are in being. It does not put the freehold in abeyance, for no freehold is devised. The chattels are not limited as inheritances, nor is there any attempt to entail them. There is no limitation of a fee on a fee, nor is there any attempt to render a fee inalienable or clog it with other illegal conditions, and these probably embrace almost all the provisions which render wills illegal. The primary guide for the construction of wills is the intention of the testator as collected from the instrument itself. It is the polar star by which all courts should be governed, and nothing should cause us to swerve from or turn aside from that rule except some unbending legal principle.

The maxims and elements which have, of late, been introduced, we may safely say, in ninety-nine cases out of every hundred, subvert and overturn the actual intention of the testator. The courts make wills for men which they never intended, and by a perversion of language, cause testators to say what they never meant or thought of. It is contended by one of the parties here that the testator has attempted to entail personal property, by providing "that if any of my children shall die without leaving *lawful issue*, then their share shall be divided among my other children, etc." It must be conceded that personal property cannot be entailed, and that words in a will which *necessarily have that construction* pass the absolute interest in the effects. Had the word "*children*" been used instead of "*issue*," the point could scarcely have been made, and yet it is well settled that the word "*issue*" may be construed "*children*," where such appears to have been the intention (1 Roper on Legacies, 86, 87). Even the general word "heirs" is sometimes so construed (Idem).

The word "issue," however, may be and frequently is explained by the context to mean children. (2 Jarman on Wills, 27; Idem, 258, 9; 7 Sim. 352; 9 Sim. 372).

The words "heirs of his body" will always import an estate tail when applied to either real or personal property, unless

[In the Matter of Weltmer's Estate.]

clearly qualified by other expressions, and when such words are used the limitation over of personal property will be void. But the word "*heirs*," alone, will not always have that effect, and the same words in a will have been construed to create an estate tail in land, as it is a favorite of the English law, and only a limited interest in personal effects, as by any other construction the will could not be carried into effect. In both cases the courts act on the principle of sustaining the will if practicable, and hold the devises good, *ut res magis valeat quam pereat.* Therefore, where the gift of a term was to A., and if he should die without leaving issue, then to B., it was held to mean leaving issue at the time of his death. (1 P. Wm. 664.) So also where the words were " to A. and his lawful heirs, and if he die and leave no lawful heir, then to B.," it must be confined to leaving no issue at the time of his death, and is a good limitation over. (2 Term R. 720. See also 3 P. Wm. 258.) And although courts are unwilling to construe the same words differently, when applied to real and personal estate, yet the doctrine seems to be recognized by some of the best writers and in numerous decisions. (Fearne. C. 12, 471 ; 2 Jarman, 306.)

In Pennsylvania it was held that a bequest of personal property to A. and B., " and in case either of them died without will or lawful issue, then the property of such son descending from, and given in the lifetime by the testatrix, was to descend to the survivor, his heirs, and assigns forever," was good by way of executory devise, as the dying without lawful issue must be understood issue *living at the time of the son's death,* because the property was to go to the *surviving* brother. The contingency must happen at the time of the son's death who died first. (6 S. & R. 460.) And where the legacy was to take effect on the failure of issue at the death of the first taker, the limitation over was good. (6 S. & R. 29.) Both of the above cases were recognized as law in Rapp *v.* Rapp (6 Barr, 45), where the words were " in case any of my children shall die unmarried and without lawful issue, the share or portion of him or her so dying, shall revert back to the survivors, share and share alike," and held good as an executory devise of personal property and the limitation over not too remote. Against these cases and principles we have had pressed upon us the case of Rewalt *v.* Ulrich (11 Harris, 388), which is contended to be conclusive of the one under consideration. We do not understand that decision as conflicting with those cited ; the words of the will are essentially different. " Should, however, my granddaughter die *without heirs,* her seventh part shall be equally divided among my six children before named or their heirs," and held the limitation over was too remote, as it imports an indefinite failure of issue. Here the words are, " die without *leaving* lawful issue." Leaving

issue when? why clearly at the time of the child's death, and such a limitation over is held in all the cases not to be too remote. The distinction is recognized in Smith's Appeal (11 Harris, 10), where Lowry, J., says, "A different construction is usually put upon the phrase, dying without *leaving* issue, when applied to personal property." Although generally satisfied with the course of reasoning of the court in Rewalt *v.* Ulrich, yet there is one position assumed by the learned judge which we may presume to doubt, that had the words been "died without issue," it would have been construed an estate tail as to personal property where there was a limitation over to persons in being. So far as our examination has extended, all of the cases in England and America have construed these words to mean the same as dying without *leaving children*, as otherwise the main intention of the testator would be destroyed. The intention to create an estate tail of personal property must be manifest before the words will be so construed, as every testator must be presumed to know he cannot create a limitation over on such an estate, although many of the cases say the same words will create an estate tail in lands. But the principle is unimportant in the present case, as the words "leaving issue" clearly shows this intent. The aid of the word "*then*" has been invoked by the other side to prove that "if any of my children shall die without leaving lawful issue, THEN their share shall be divided," etc., means that their share of the estate shall be divided among the surviving children at once— at that time, treating the word as an adverb of *time*, and so it is in common parlance, and may be so intended here. But it is, when applied to limitations, generally treated as a particle of inference, connecting the consequence with the premises, and meaning "in that event," or "if that happens," and is a word of reasoning rather than of time. (2 Jarman, 319.) But whether treated here as an adverb of time, and meaning "*at once* on the death of," or as a particle of inference, and meaning "in that event," is unimportant, as in either case we understand it to signify that if either child dies without leaving issue living at the time of his or her death, the share shall at once, immediately, and in that event, go to the survivors or the heirs of the survivors, if they shall have left children, which we believe the testator meant by the word "heirs," as used here. The counsel of Henry's creditors and Anna's administrator, has urged us to apply another rule adopted by the courts for expounding wills to the present case, "that the testator meant, if any of his children should die, leaving issue during his (the testator's) lifetime, then the estate should go to the others," etc. It must be conceded that many of the best writers on wills and devises, such as Powell, Roper, and Jarman, recognize such a rule of interpretation in some cases, and the courts have of late resorted to it in many instances

[In the Matter of Weltmer's Estate.]

to solve the intention, but we are of the opinion that not once in a thousand times does any testator have such an event in contemplation in making his will, or where he has, it will be provided for in terms. In almost every instance where it has been applied, it has been to subvert, and not to promote the intention of the testator. It may answer as a means of cutting the Gordian knot, where from the intricacy or ambiguity of a will it is impossible to untie it, but the meaning of the testator is in this case, as we apprehend, free from doubt.

There is one provision in this will which has not been adverted to in the argument: although in the clause cited the testator bequeaths all of his property, real, personal, and mixed ; but in a latter part of the instrument he directs his executors to sell all of his personal property, not bequeathed, at public vendue, and the money arising from the same, after paying his debts, " to be paid over to my heirs as they become of age, share and share alike." This being the last disposition of his *strictly personal property*, must control the earlier one in the same will, according to the legal maxim, that the last will must take effect (2 Roper, 328). It is probable that all the proceeds of such sale was required to pay his debts, but if any money remains therefrom, it must go to all of the children in equal portions, including the representatives of Henry and Anna, who, it is conceded, attained their majority.

We are of the opinion that neither the administrators of Henry Weltmer nor Anna Sanders are entitled to any interest in the money raised out of the real estate of Ulrich Weltmer, as the same went on their deaths to their surviving brothers and sisters. The account must be referred back to the auditor to make distribution on the principles indicated.

AFFIRMED BY THE SUPREME COURT, July 25th, 1861. Not reported.

*Funck, for plaintiffs.*

*Kunkel and Mumma, for defendant.*